RESTAURANT ENTERPRISES, INC., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. THE SUSSEX MUTUAL INSURANCE COMPANY, A CORPORATION AUTHORIZED TO DO BUSINESS IN THE STATE OF NEW JERSEY AND JOSEPH J. PAGGI, T/A PAGE AGENCY, JOINTLY AND SEVERALLY, DEFENDANTS-RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued June 12, 1967—Decided July 10, 1967.

Before Judges Conford, Foley and Leonard.

*Mr. H. Hurlburt Tomlin* argued the cause for appellant (*Messrs. Adamo & Pagliughi,* attorneys).

*Mr. Samuel A. Gennet* argued the cause for respondent, The Sussex Mutual Insurance Company (*Mr. Aram R. Schefrin* on the brief).

*Mr. Arthur Montano* argued the cause for respondent, Joseph J. Paggi (*Messrs. Kisselman, Devine, Deighan & Montano,* attorneys; *Mr. F. Herbert Owens, III,* on the brief).

The opinion of the court was delivered by

Conford, S. J. A. D. This action, tried before a jury, was brought on a purported binder for a fire insurance policy to recover the amount of the alleged coverage for fire loss, and also against an insurance agent for negligence

in effecting the insurance should the policy be held not to have been in existence when the loss took place. Defendants cross-claimed against each other. The jury returned a verdict of no cause of action against plaintiff and in favor of both defendants, and did not determine the cross-claims. Plaintiff appeals.

The real property involved consisted of a building housing a cold storage unit, an office and a cocktail lounge. In 1962 plaintiff decided to acquire insurance with a mutual company upon the expiration of policies issued by stock insurance companies. Defendant Paggi, trading as the Page Agency, was accordingly instructed by plaintiff to obtain mutual insurance company coverage on the building. Paggi was an insurance broker empowered to place insurance with several different companies. By agreement dated August 31, 1962 and terminated in mid-January 1963 Paggi became an agent of defendant insurance company (Sussex, *post*) authorized to receive proposals for all insurance which that company issued. The agency agreement limited the agent's binding authority to $40,000 on a single risk and stated that "the company must be notified within 48 hours in writing of any risk on which it is bound." Paggi was a "small" stockholder and former officer in plaintiff company.

Plaintiff submitted evidence that in directing Paggi to effectuate a change to mutual insurance it left the company, amount and type of coverage up to him. It introduced in evidence a binder, dated October 14, 1962 and effective the same date, covering the building for $32,000 under a Sussex fire policy. The binder's printed duration of effectiveness was crossed out and the remark "Pending MSO rates" was substituted. The loss in question occurred December 30, 1962.

*N. J. S. A.* 17:36–5.16, pertaining to fire insurance binders, provides: "Binders or other contracts for temporary insurance may be made orally for a period which shall not exceed ten days or in writing for a period which shall not exceed 60 days."

"MSO rates" are rates issued by the Mutual Service Office, to which Sussex subscribed, for the use of its subscribers. MSO puts out a manual which contains rates for various types of structures. Paggi had a copy of it. For a structure with multiple uses, as here, an agent could calculate a rate by applying the highest of the rates for a component use. According to the proofs, however, the MSO rate, if requested, would not necessarily be that of the highest component and would often be lower. Paggi admitted he could have issued the policy at the highest component rate and adjusted the premium after the MSO special rate was received. Paggi requested rates on plaintiff's property from MSO on September 27, 1962. Although the request cited National Grange Mutual Insurance Co. as the prospective insurer, Paggi testified that he intended to place the insurance with Sussex and that the designation of National Grange did not obligate him to place it with the latter company.

Sussex claimed never to have received the binder or been aware of its existence until January 3, 1963, several days after the fire loss, when it received a notice of loss. It submitted testimony that there was no evidence in its records that a binder had been received by it at any time prior to the loss. Paggi testified he issued the binder at some time prior to its effective date; that the original was mailed to the Boardwalk National Bank, the loss payee on the policy and mortgagee of the property; that a copy without transmittal letter was mailed to Sussex, a copy retained by Paggi and a third copy delivered to plaintiff. Paggi's secretary corroborated this testimony. A representative of plaintiff testified to receipt of its copy of the binder but could not state when it was received. There was no testimony from the mortgagee as to when it received the binder.

Between October 14, 1962 and the end of that year Paggi did not communicate with Sussex regarding the policy. On several occasions, subsequent to inquiries from the mortgagee, plaintiff inquired of Paggi concerning the policy but was told the latter was still awaiting an MSO schedule of

rates. At no time did Paggi intimate there was a lack of coverage. Paggi testified that on December 27, 1962 he received a telephone call from a Mrs. Flint of the mortgagee bank inquiring when the policy would be issued. He told her the risk was still bound and "upon receipt of the necessary papers we would issue the policy." Mrs. Flint testified, generally confirming such a conversation. Over objection Paggi answered a question as to whether this assurance constituted an oral binder in the affirmative. The special rate for plaintiff was published January 2, 1963, effective December 7, 1962, and was received by Paggi on or after January 2.

A manual prepared by MSO contained the text of *N. J. S. A.* 17:36-5.16, *supra.* Paggi acknowledged he had a manual, although he could not be certain it was the same edition as that introduced at trial. He testified he was not aware of any statutory 60-day limitation on binders. There was evidence that he had placed other binders for Sussex for periods exceeding 60 days.

As noted, the binder was for $32,000. The building was a total loss. Plaintiff recovered on a $20,000 insurance policy placed on the building with another company and $7,500 on a policy insuring contents. Plaintiff's expert testified it would cost $70,200 to replace the building. Plaintiff purchased the building in 1962 from a related corporation for $60,000.

The evidence as to the fire itself is set out below where appropriate.

I

Plaintiff's first briefed ground of appeal is that the jurors were confused by the charge as a whole, as evidenced by their failure to pass upon the cross-claims. This point was prudently abandoned by plaintiff at oral argument. It is patently without merit, since once the jury decided in favor of both defendants as against plaintiff there was no need to determine the cross-claims.

## II

Plaintiff argues that the trial court erred in charging the jury over its objection as follows:

"If you determine that this loss was caused by fire and explosion, since there is no testimony before you as to what extent of the damage was caused by fire and what extent was caused by explosion, your verdict then, everything else being equal, would have to be speculative. You are not permitted to speculate, and there being no proof with respect to that, then your verdict would have to be no cause for action, there being no establishment of the extent of loss as to fire and as to explosion."

Material to the questions raised is the language of the standard fire policy in this regard, included in the binder by operation of statute. *N. J. S. A.* 17:36–5.16; *N. J. S. A.* 17:36–5.20, lines 28–37:

"Conditions suspending or restricting insurance. Unless otherwise provided in writing added hereto this Company shall not be liable for loss occurring * * * (c) as a result of explosion or riot, unless fire ensue, and in that event for loss by fire only."

The trial court did not read this essential provision to the jury. We find the instruction as given erroneous as a matter of law and as not justified by the evidence. Insofar as the facts are concerned, there was no evidence of substantial probative value that the loss was caused by explosion as distinguished from fire. Plaintiff's president Penza testified that he was at the fire for several hours, beginning an hour after it started. He found the building "all in flames." The building was "completely burned." There was no contradictory testimony. Sussex submitted no evidence of any loss to this building by explosion on its case. It relies in this regard mainly on vague, speculative hearsay. Cited is testimony on cross-examination by Penza to the effect that he "heard several reports. Some said it was an explosion and some said it was a fire * * * They didn't know, they were just laymen." Mr. Fatoto, another officer of plaintiff, was

asked on cross-examination whether he remembered testimony he gave on depositions that "From the reports I received there was an explosion, a gas leak, that is what I was told from the police, I think, or whoever made the investigation." But he testified at the trial that "the police officer told us \* \* \* after the investigation was completed it was then the final result was causes unknown \* \* \*"

A statement in Sussex's brief that photographs in evidence show "window frames from the destroyed building hanging from telephone wires" is not borne out by our examination of those photographs.

There was also evidence of three broken windows in a nearby restaurant, but no indication as to when or how they were broken, whether by explosion, heat or otherwise.

Taking the foregoing evidence in its entirety, we do not deem it to constitute more than a scintilla of proof that the loss of this building, which from the uncontroverted evidence burned for several hours until only rubble was left, was due to any extent to explosion. This is particularly so in the light of the statutory policy language which plainly does not negate coverage merely because an explosion incepts a fire, if it is the fire itself which is the ensuing and proximately effective cause of the loss of the building as a whole.

From the trial court's unexplained criterion given to the jury ("If you determine that this loss was caused by fire and explosion \* \* \*") the jury could well have found in the affirmative on the mere determination that an explosion had started the fire and then have denied recovery on the basis of the remainder of this portion of the charge which practically dictated a verdict for Sussex in the event of such affirmative finding.

██ Sussex argues that the latter part of this portion of the charge was justified on the basis of the rule that the burden of persuasion is on the insured to show that excluded policy hazards did not cause the loss. *Newman v. Great American Ins. Co.,* 86 *N. J. Super.* 391, 403 *(App. Div.*

1965) ; *Brindley v. Firemen's Ins. Co. of Newark, 35 N. J. Super.* 1 (*App. Div.* 1955). In the first place, the prerequisite for application of this rule is that there first appear in the case of either the insured or insurer some evidence tending to show the loss was due to an excluded cause. We have already held that there was no more than a scintilla, if that, to show this loss was due to explosion under a proper construction of the policy language. A scintilla of proof is insufficient to go to the jury. *Long v. Landy, 35 N. J.* 44, 54 (1961).

 But even were the proof of explosion or of loss by explosion to be deemed more substantial than a mere scintilla, the rule as to burden of proof of *Brindley* and *Newman,* both *supra,* would not apply here as the policy does not make loss by explosion an *excluded* hazard for purposes of application of that rule on the present facts. The rule is a harsh one, and its operation tends to impede recovery by an insured, particularly in a difficult proof situation like the present. A rule allocating a burden of proof should subserve, not deflect a just result. We are therefore of the view that the *Brindley-Newman* rule ought not to be applied here to frustrate recovery unless the policy language plainly compels it. We do not think this policy does. Loss from explosion is not here unequivocally and unqualifiedly designated an excluded hazard, as contrasted with the windstorm policies in *Brindley* and *Newman* in relation to loss directly or indirectly, in part or in whole, from water, tides or waves, whether or not wind-driven. In the present fire policy loss from explosion is excluded only where fire does not ensue. Here fire did ensue. In that posture of the contract language and the facts it was the insured's burden only to establish loss by fire (whether or not incepted by explosion), not to disestablish loss by explosion. Once there was affirmative proof of loss by fire, as here there definitely was, the burden to resist the claim on the basis that all or part of the loss was attributable solely to explosion was that of the company.

Thus the charge in the aspect discussed was prejudicially erroneous and compels reversal as to Sussex.

Other assertions of error by plaintiff as against Sussex have been examined and found not to have merit, either on the face of the contentions or because not the subject of proper objection at trial and not involving plain error.

## III

For the guidance of the trial court at the retrial, however, we feel impelled to point out that it was wrong to submit the issue of Sussex's liability to plaintiff to the jury insofar as posited on the written binder. No error is claimed before us by Sussex in the submission to the jury of the issue of oral binder, and we perceive none.

The written binder had expired as a matter of law by the time of the loss.

The trial court correctly ruled at trial that the written binder "terminated" after the statutory period of 60 days, fixed by *N. J. S. A.* 17:36–5.16, quoted above, and so instructed the jury (except to inadvertently refer to the period as "two months") but inconsistently gave the issue of coverage thereon to the jury for decision.

There is little or no attempt in plaintiff's brief to demonstrate how or why the statute, which says in material part, "Binders or other contracts for temporary [fire] insurance may be made * * * in writing for a period which shall not exceed 60 days," should not be construed literally to forbid the continuance in effect of any written binder beyond 60 days. Although no case has been cited by either side squarely in point, it has been stated by this court, in relation to oral binders, which the same statute confines to a duration of ten days:

"We need only emphasize that the statutory limitation appears to us to be as definite and unqualified as if embodied in a written policy and that any such oral insurance agreement, express or implied, which overreaches in duration of time the statutory limitation would

be invalid." *Flowers by DiAlton's v. American Ins. Co.*, 42 *N. J. Super.* 493, 494 (*App. Div.* 1956);

In accord: *Decor-El, Inc., v. Bertsch,* 13 *N. J. Super.* 166, 171 (*Law Div.* 1951).

█ Moreover, as stated in *Herbert L. Farkas Co. v. N. Y. Fire Ins. Co.*, 5 *N. J.* 604, 609–610 (1950) :

> "Fire insurance policies must be in the form prescribed by statute, and any facts or conditions imposed in a policy inconsistent with or constituting a waiver of the standard form provisions are a nullity."

In view of the thus settled law as to the effect of statutory requirements concerning fire policies, the written binder lost its effect after 60 days, and this entirely without regard to the question of agency of Paggi for Sussex. What the latter would not have been legally competent to do itself it could not do by agent.

In so ruling, we note that no question of estoppel was raised by plaintiff against Sussex, either at pretrial, trial or on appeal, and we imply no view on any such issue.

## IV

█ In relation to plaintiff's appeal as to Paggi, we find plain error in the following charge of the court:

> "If you find, and there is some testimony in this case, that in placing this insurance the Defendant Paggi was acting as agent in this particular instance of the plaintiff, then if you find that the Defendant Paggi was negligent, his negligence would refer back to the plaintiff and the plaintiff could not recover against the Defendant Paggi."

It is elementary that the negligence of an agent in undertaking to place insurance for a principal, resulting in the failure to effect the insurance to the damage of the principal, will render the agent liable to the principal. *Marano v. Sabbio,* 26 *N. J. Super.* 201 (*App. Div.* 1953).

■ While it is true that this error was not called to the attention of the trial court, we deem it reversible plain error as constituting a serious misstatement of the law going to the very heart of plaintiff's cause of action against Paggi. *Maccia v. Tynes*, 39 *N. J. Super.* 1, 6 (*App. Div.* 1956).

We cannot agree with Paggi's contention that the error was cured by other portions of the charge. The sections thereof cited in support do not disavow or qualify the specific unequivocal predicate for denial of liability stated in the erroneous portion of the charge, and that could well have been the reason for the verdict against plaintiff and in favor of Paggi.

Judgment reversed.